## PALMER et al. v. BOARD OF COUNTY CANVASSERS OF MORGAN COUNTY et al.

No. 7016. Decided January 30, 1947. (176 P. 2d 608.)

See 29 C. J. S., Elections, Sec. 230; 34 Am. Jur. 909.

*Willis W. Ritter* and *Clinton D. Vernon,* both of Salt Lake City, and *Ira A. Huggins* and *Stuart P. Dobbs,* both of Ogden, for plaintiffs.

*Shirley P. Jones,* of Salt Lake City, for defendants.

LATIMER, Justice.

This is an action in mandamus instituted by plaintiffs, James T. Palmer and Wesley Anderson, candidates for County Commissioners of Morgan County, Utah, seeking to require defendants, as members of the Board of County Canvassers of said county, to correct the 1946 official election returns as certified to by the board, and to require the County Clerk of said county to issue a certificate of election to the plaintiffs. Prior to the hearing before this Court, and upon his own motion, Frank L. Whittier, a candidate for County Treasurer, was later made a party plaintiff.

The plaintiffs, Palmer and Anderson, in their petition allege in substance that plaintiffs were and now are citizens of the United States and residents and qualified voters of Morgan County, State of Utah; that they were the duly qualified and nominated candidates on the Democratic ticket for the offices of County Commissioners of Morgan County, for the four and the two year terms, respectively, at the general election held on November 5, 1946; that defendants Crouch, Jensen, and Palmer constitute the Board of County Commissioners of Morgan County, and as such are ex officio the duly qualified and acting members of the

Board of County Canvassers of said county; that defendants
Lincoln Jensen and Golden Porter were the duly nominated
candidates on the Republican ticket for the same offices of
County Commissioner as petitioners were nominated for on
the Democratic ticket; that after the closing of the polls
in voting district No. 5, Morgan County, Utah, the election
judges counted the votes and certified in the official tally
lists under "Total Votes Cast" that plaintiffs Palmer and
Anderson each received a total of 179 votes; and that de-
fendants Jensen and Porter received 126 and 130 votes,
respectively; that on November 12, 1946, the Board of
County Canvassers met to canvass the election returns from
all voting districts in Morgan County; that in considering
the returns of Voting District No. 5, they refused to accept
the figure of 179 votes for petitioners, as certified to by the
election judges, because only 123 votes were marked in-
dividually in the tally boxes on the tally sheet; that there
was also a figure "56 St" written beside each of these two
candidates' names on the tally sheet; that the Board of
County Canvassers thereupon rejected 56 straight Demo-
cratic votes, which is what plaintiffs claim is the meaning
of the notation, "56 St"; that in their statement entitled
"Tabulation of Election Returns," the Board of Canvassers
erroneously gave the total number of votes received by
plaintiffs in said District No. 5, as 123, whereas in fact
each of them received 179 votes in said District; that this
Tabulation of Election Returns erroneously states that plain-
tiff Palmer received a total of 523 votes for the four year
term of County Commissioner, whereas in fact he received
a total of 579 votes; that plaintiff Anderson received a total
of 500 votes for the two year term of County Commissioner,
whereas in fact he received 556 votes; that defendant Jen-
sen received 529 votes in the county for the four year term
of the office of County Commissioner, and that defendant
Porter received 555 votes in said county for the two year
term of the office of County Commissioner; that the action
of the Board of Canvassers in rejecting the 56 votes for each
of plaintiffs makes it appear that defendants Jensen and

Porter were elected, and that defendant Anna Sommers, County Clerk of Morgan County and Clerk of said Board of Canvassers, is about to issue certificates of election to defendants Jensen and Porter, and unless restrained from so doing will issue such certificates to said defendants.

Plaintiffs then pray that an alternative writ of mandate issue under the seal of this court directing and requiring the Board of Canvassers of Morgan County to correct forthwith the official records of said board, to show the true and correct number of votes received by each of plaintiffs in said election, and to execute and issue to each of plaintiffs a certificate of election declaring plaintiff Wesley Anderson elected to the office of County Commissioner of Morgan County two year term; and plaintiff James T. Palmer elected to the same office, four year term; or that in default thereof they should show cause to this court why they should not do so.

Defendants, with the exception of James T. Palmer, demurred both generally and specifically to the allegations of the petition, and then answered, denying many of plaintiffs' allegations. The effect of the denials was to put directly in issue the right of the plaintiffs to any relief by a writ of mandate. The dispute in facts, if any, has no material bearing on this question herein involved, as the decision must rest on the exhibits and memoranda in possession of the defendants at the time they certified the election results; and there is and can be no dispute about what appears on the face of the official documents.

In order to better follow this opinion, it is necessary to make reference to and describe in part the official exhibits before the court. These consist of the Poll Book, the Tally List, the Statement of Disposition of Ballots, the Certificate of Total Votes Cast, and the Tabulation of Election Returns, all for District No. 5, North Morgan District, Morgan County, Utah.

The Tally List is a printed sheet laid out as follows: The page is divided into eight subsections so that the votes for eight candidates are tallied on each side of the sheet. In

the upper left hand corner are three lines which have the name of the office for which the candidate is running, the name of the candidate, and total votes cast for that particular candidate, all filled in by the election judges. The balance of the subsection is broken into small rectangles with figures in multiples of five printed in each box. These rectangles are referred to in the statutes and in instructions to judges as "boxes," which permit five votes to be tallied in each. These lists simplify both the counting and the tallying of the votes cast.

The Poll Book shows the number and names of the electors voting in District 5 on November 5, 1946, and has on the cover an oath properly executed by the election judges, certifying to the accuracy of the information shown.

The Statement of Disposition of Ballots is a certificate by the election judges showing the number of ballots received in the district, the number delivered to voters, the number of ballots used, the number spoiled, and number unused and returned.

The Certificate of Votes Cast is a certificate made by the election judges showing the name of the candidates, listed in ballot order, with a column for total votes cast opposite each respective name. On the exhibit the total votes cast for each candidate has been filled in by the judges.

The Tabulation of Election Return is a printed sheet which has the names of the candidates filled in on the left hand side and has six columns for the six voting districts in Morgan County. On the right hand side is a column where the totals of six districts are tabulated.

The exhibits referred to above furnish this court with the information which was available to the Board of Canvassers on November 12, 1946, when the canvass was made. These exhibits show unequivocally the following facts: there were 600 ballots delivered to the election judges of District No. 5, Morgan County; 299 of these were delivered to and used by the voters at the polls; 301 ballots were returned unused; there were no ballots spoiled; 11 absentee ballots were cast and counted; 299 present voters were designated

in the Poll Book and 11 absent voters designated; the Certificate of Total Votes Cast shows that the total votes cast in this district for James T. Palmer was 179; for Wesley Anderson, 179; for Lincoln Jensen, 126; and for Golden Porter, 130. The tabulation as shown on the "Tabulation of Election Return" and approved by the Board of Canvassers shows James T. Palmer to have received 123 votes; Lincoln Jensen, 126 votes; Wesley Anderson, 123 votes, and Golden Porter, 130 votes; that the "Tally List" shows 123 votes marked in the boxes for James T. Palmer, 179 total votes cast, and the letters and figures written in the corner near the candidate's name, "56 St"; that the "Tally List" shows 123 votes tallied in the boxes for Wesley Anderson, 179 total votes cast, and the same letters and figures near his name, to wit: "56 St"; that for the Commissioners Lincoln Jensen and Golden Porter, 126 and 130 votes, respectively, are tallied in the boxes, and all other exhibits show the same number, no letters or figures such as "56 St" or "51 St" appear beside these candidates' names on the tally sheet.

In addition to plaintiffs the following Democratic candidates have the letters and figures "St 56" written under or immediately to the right of their names, to wit: Abe Murdock, U. S. Senator; Walter K. Granger, Representative in Congress; Martin M. Larson, Justice of Supreme Court; Alonzo F. Hopkins, State Senator; John Wilkinson, State Representative; Robert Niles, County Attorney; and Horace G. Clark, County Surveyor, while the other Democratic candidates have no such entries on their appropriate portion of the tally sheet; that three Republican candidates, to wit: Frank L. Whittier, County Treasurer; A. R. Turner, County Assessor; and Sydney H. Heiner, County Attorney, have the notation "51 St" opposite or under their respective names on the tally sheets, while the remaining Republican candidates have no such entries near their respective names; that in those instances where the quoted letters and figures appear, the sum total of votes tallied in the "boxes" plus the quoted figure near the name equals the figure shown in the

"total vote cast" for the candidate, and that for those candidates where there are no quoted letters or figures, such as "56 St" or "51 St", shown, the total votes cast equals the number tallied in the "boxes"; that on the tally sheet the Board of Canvassers, in determining the votes cast for the candidates, counted only the votes tallied in the "boxes" and refused to accept the figures in the "total votes cast" column, and refused to consider the quoted letters and figures "56 St" or "51 St," in determining the number of votes cast for each candidate; that the election certificates have not been issued to any of the candidates for the office of county commissioner.

The contention of defendants is that the judges in attempting to carry out their duties failed to comply with the provisions of Section 25-6-26, Utah Code Annotated 1943, the applicable part of which is quoted herewith:

"* * * When the ballots and the poll lists agree, or have been made to agree as above provided, the board shall proceed to count the votes. Each ballot shall be read and counted separately, and every name included in a marked ticket, set, or list of nominees, or separately marked as voted for, on the ballot, where there is no conflict to obscure the intention of the voter as aforesaid, shall be read and marked upon the tally list before any other ballot is proceeded with; and the entire number of ballots, excepting 'excess' and 'defective' ballots, shall be read and counted and placed upon the tally lists in like manner, and when all the ballots have been counted as herein provided the board shall compute and enter the totals."

In this connection it appears from the figures shown in the "total votes cast" column on the tally sheets, the election judges failed to strictly comply with this section, and failed to tally in the boxes all of the votes cast for most of the candidates, including the plaintiffs.

An inspection of the exhibits referred to in this opinion indicates that 310 votes were cast in the district. In the one case where all votes for the two competing candidates are tallied in the "boxes," the sum total of votes cast for the two candidates for the same office total 305. In the other cases, the total votes cast, as shown by the tally sheet,

added together for the two opposing candidates, total between 300 and 310 votes with the exception of the office of County Assessor, and in this case the total for both opposing candidates is 312 votes.

If the numbers indicated by four vertical and one horizontal marks and tallied only in the "boxes" are used, the total votes cast for both candidates for each office vary between 198 and 254. It will be seen therefore that unless some effect is given to the notations "56 St" and "51 St," in every instance but one, 55 to 106 votes cast are and will remain forever unaccounted for.

The figures certified to by the Board of Canvassers are arrived at by only using the votes individually and separately marked in the tally boxes. The net result of adopting this method is that, while 310 votes were cast in the district, the two opposing candidates for each of the ten offices receive credit for varying numbers from 198 to 255 votes, the remaining 51 to 106 votes not being counted by virtue of the fact that the pencil markings of four vertical lines and one horizontal line in each tally box were not placed on the Tally Sheet by the election judges.

Such a result might have to be accepted were it not for the provisions of Sections 25-7-4, and 25-7-12, of the Utah Code Annotated 1943. The first-quoted section provides:

"* * * In canvassing no returns must be rejected, if it can be ascertained therefrom the number of votes cast for each person. The fact that the returns do not show who administered the oath to the judges of election, or a failure to fill out all the certificates in the poll books or to do or perform any other act in making up the returns that is not essential to determine for whom the votes were cast, is not such an irregularity as to entitle the board to reject the same, but they must be canvassed as are other returns."

The next-quoted section states:

"Neither the declaration of the result nor the certificate shall be withheld on account of any defect or informality in the returns of any election, if it can be ascertained with reasonable certainty from such returns what office is intended and who is elected thereto."

To give proper effect to these two sections it becomes necessary to determine whether or not the failure of the election judges to place the four vertical and one horizontal marks in the "boxes" is such an irregularity or defect as to entitle the board or reject the totals computed by the election judges and entered on the Tally Sheet. And further, is the failure to so place the marks in the "boxes" such a defect or informality in the return that it cannot be ascertained with a reasonable degree of certainty what office is intended or who is elected thereto?

When all the exhibits which were prepared by election judges are examined collectively, or when the Tally Sheet only is considered, it is reasonably apparent that where the letters and figures "56 St" or "51 St" appear, this number of votes were cast by the voters for the respective candidate but were not marked in the "boxes"; further, that the judges chose to group certain straight ballots and then neglected to complete the markings on the Tally Sheet. To hold otherwise, would be to disregard the information contained on all the exhibits, including the Tally Sheet, and limit the information available to the Board of Canvassers solely to the pencil marks in the boxes. To do this would be inconsistent with the quoted statutes and inconsistent with accepting the returns when it can be reasonably ascertained therefrom the number of votes cast for each person.

Defendants in answer to the above, advance the theory that the Tally Sheet is the basic and primary evidence of the number of votes cast and that the certificate of "Total Votes Cast" is a copy of the return made by the election judges from the Tally Sheet, and is therefore secondary. To sustain this argument, defendants cite Section 25-6-32, Utah Code Annotated 1943, the applicable portion of which is quoted herewith:

"* * * The judges must inclose in another envelope, and direct to the county clerk, city recorder or town clerk, as the case may be, a copy of the total number of votes received by each candidate whose name is on the official ballot, the same to be placed on file in the office of the county clerk, city recorder or town clerk, as the case may be, for public inspection. * * *."

The weakness of this argument is that the same information as to the number of total votes cast appears on both the Tally Sheet and the Certificate of Total Votes Cast. The Tally Sheet shows the total votes cast for each of the plaintiffs as 179, and these figures are identical with those shown on the exhibit entitled "Certificate of Total Votes Cast." There is no discrepancy between the basic or primary exhibit, as classified by the defendants, and the so-called "copy." The discrepancy or inconsistency, if any, appears on the Tally Sheet itself, so it is not necessary to determine which of the exhibits might be controlling. It is merely a question of reconciling the figures on the Tally Sheet.

All parties to this controversy agree that the duties of the Board of Canvassers are ministerial in nature and that under the law of this state the Board of Canvassers has no judicial or quasi-judicial powers. *Rich* v. *Henderson*, 49 Utah 258, 162 P. 621; and *Hill* v. *Moss*, 61 Utah 213, 211 P. 994. This being so, the board in canvassing the returns had no power or duty other than to determine from the returns the candidates who had received the highest number of votes, and to have election certificates issue accordingly. While two members of the board joined in the motion to certify the two Republican candidates as having received the highest number of votes, such motion was based on a rejection of certain of the evidence, and such action is not found by this court to have been in keeping with the records and evidence before the board at the time the canvass was made by it.

Having erred in failing to give due consideration to all the records before it, the Board of Canvassers and the individual members thereof should reconvene forthwith and issue a corrected "Certificate of Total Votes Cast" which will conform to totals shown on the Tally Sheets and the other election records, which were before it at the time of the canvass. If plaintiffs do not have a plain, adequate, and speedy remedy at law, then mandamus is a proper proceeding to accomplish this result.

While counsel for defendants did not argue the adequacy of plaintiffs' remedy at law and the propriety of the issuance of a writ of mandate in this case, such question has been raised by the pleadings and proof, and must be determined by this court before issuing such a writ. ■ It is elementary that if plaintiffs do have a plain, speedy and adequate remedy at law, under Section 25-14-1 (providing for election contests), or under any other statute, then a writ of mandamus will not issue. The adequacy of plaintiffs' remedy at law in this type of case has been considered by this court and directly passed on in the case of *Hill* v. *Moss et al.*, 61 Utah 213, 211 P. 994, 997, where the court said:

"It is also urged by defendants that Comp. Laws Utah, 1917, c. 16, relating to election contests, afford plaintiff an adequate remedy, and that therefore a peremptory writ of mandate should not issue.

"The application in this case is for a writ of mandate compelling defendants to issue a certificate of election to the plaintiff. It is not a proceeding to have him declared entitled to the office. If it were the latter, defendants' contention would be sound and, in all probability, unanswerable. But a demand for a certificate of election by a person having the highest number of votes on the face of the returns, and a demand to be declared entitled to an office irrespective of the returns, present questions entirely different and demand different remedies for their determination. It cannot, therefore, be assumed that one form of action is a complete and adequate remedy for the other. If plaintiff, on the face of the returns, was clearly entitled to be declared elected under the law regulating the duties of a canvassing board, then it was the duty of the board to declare him elected, and, likewise, the duty of the clerk to issue him a certificate. This would at least be prima facie evidence of his right to the office, and, if subsequent proceedings were had involving actual title to the office, he would be placed in the position of contestee instead of contestant with whatever advantages that might result from questions relating to the burden of proof. In view of these considerations we are not prepared to hold that section 2410, c. 16, Comp. Laws Utah, 1917, was a complete and adequate remedy."

Perhaps the statement made in Paragraph 17, High's Extraordinary Legal Remedies, 3rd Edition, well states the reason for this rule:

"It is to be borne in mind, however, in the application of the principle under discussion, that the existing legal remedy relied upon as a bar to interference by mandamus must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the particular circumstances of the case. That is, it must be such a remedy as affords relief upon the very subject-matter of the controversy, and if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy. And if the existing remedy is inadequate to place the injured party in the position which he occupied before the injury or omission of duty complained of, it is insufficient for the purposes of the rule under discussion and will not prevent the interposition of the courts by mandamus.   *   *   *"

As applied to the plaintiffs in this case, the statutory right to proceed with an election contest is not adequate. Plaintiffs have the right to be declared elected, and to receive a certificate of election, with its corres-      ■
ponding rights. To hold otherwise might, for all time,
bar plaintiffs from the benefits of those rights conferred upon them by virtue of having received the highest number of votes in this election.

In connection with the rule of law laid down in this decision it should be borne in mind that it is not intended, in any way, to infer that plaintiffs may ultimately have the right to occupy the office. Such question is not involved in this decision and cannot be determined by such a proceeding as this.

This decision is intended only to require the Board of Canvassers to carry out the provisions of the statutes, and goes no further. As is stated by James L. High, in his treatise entitled Extraordinary Legal Remedies, 3rd Edition, Par. 11:

"It is worthy of note that proceedings in mandamus do not always or necessarily determine the questions of ultimate right involved, and the writ is frequently granted when it can only determine one step in the progress of inquiry, and when it cannot finally settle or determine the controversy. A familiar illustration of this may be found in cases of mandamus to canvassers of elections, to compel them to canvass the

votes cast and to declare the result accordingly, where it may still be necessary to resort to proceedings, in quo warranto, to determine the ultimate questions of right and to procure admission to the office."

Let a peremptory writ issue as prayed for in the complaint. Each party to pay his own costs.

McDONOUGH, C. J., and PRATT, WADE, and WOLFE, JJ., concur.